## CONTRACTS—BILLS AND NOTES. 415

[Clark Circuit Court, June Term, 1887.]

Stewart, Shauck, and Shearer, JJ.

*MATTHEW S. STEWART ET AL. v. GEORGE SIMPSON.

VALIDITY OF A CONTRACT ENTERED INTO WITH A BOHEMIAN OATS COMPANY.

Where an individual enters into a contract with a Bohemian Oats Company, whereby the latter sells and delivers to the former a quantity of oats, at the price of ten dollars per bushel, and at the same time executes to such purchaser, a bond conditioned to sell for him, within a stipulated time, twice the quantity of oats so by him purchased, at the same price per bushel; and in consideration thereof, the purchaser executes to such company, or its agent, a promissory note for the amount of such purchase, such contract is not, nor is such note, void, under sec. 4269, Rev. Stat.

ERROR to Court of Common Pleas of Clark county.

The original action was brought by Simpson to recover of the plaintiffs in error the sum of two hundred dollars and interest, alleged to be due upon a promissory note, executed March 31, 1885, by the latter in favor of M. H. Buckley, and by him transferred by delivery, before maturity, to Simpson.

The makers, by their answer, admit the execution of the note, but aver that it was given in pursuance of what is commonly called the Bohemian Oats scheme, which is as follows: A certain number of bushels of oats are sold at ten dollars per bushel; the seller gives the purchaser a bond conditioned that a certain Bohemian Oats Company will sell for the purchaser, within a year after the date of the bond, twice the quantity of oats bought, and the purchaser gives the seller his negotiable promissory note, payable to bearer, for the price of said oats, at $10.00 per bushel; which note is then sold to an innocent purchaser for value. And it is averred, that in order to carry out said scheme, it will be necessary each year, to sell at said price, twice the number of bushels of said oats, sold during the year preceding; that it soon will be impossible to sell at the price stated, which will result in a decline to the real value of the oats, say thirty cents per bushel. That the purpose and object of said scheme, and of all contracts and agreements in pursuance thereof, is to defraud and to obtain money at the expense of persons who may have been induced to purchase said oats; that said scheme has

---

*This case was followed in Kitchen v. Loudenback, 2 Ohio Circ. Dec., 129, 131. Cited in Village of Clyde v. Mohn, 2 Ohio Circ. Dec—(4 C. C., 537.) See William v. Keel, 17 B., 118, for a contrary holding.

resulted and will result in great injury to such purchasers, and in great public disaster; and that the same and all contracts thereunder, are fraudulent, contrary to public policy and void.

It is further averred, that the only consideration for said note, was said twenty bushels of oats, to be used in furtherance of said scheme, and a bond conditioned as above stated.

It is also alleged, that said note was delivered by the makers to said Buckley, as the agent of said company, and that he then and there knew that it was without legal consideration, and had knowledge of the fraudulent and unlawful nature of said scheme, of which said note was a part; and that the plaintiff, when he took the note, had like knowledge or sufficient notice to put him upon inquiry.

By the reply the plaintiff denies all and singular the allegations of the answer, and avers, that "*if there was any consideration for said note, as alleged in said answer, said Matthew S. Stewart had full knowledge of the same at the time said note was given, and executed the same with full knowledge of the consideration, its scope and effect, and that this plaintiff did not have such knowledge, nor any opportunity to acquire the same, by any notice which would put him upon inquiry.*"

The defendants interposed a motion to strike out the *italicised* portion of said answer, as irrelevant, redundant and immaterial, which was overruled, and this is assigned as error.

Thereupon defendants, by leave of the court, filed an amendment to said answer, by way of a second defense, which after admitting the execution of the note and repeating the description of the scheme, avers: That it is necessary in order to carry on said scheme, and so long as said scheme is carried on, to sell each year at said price of ten dollars per bushel, and under the terms of said Bohemian Oats scheme, twice the number of bushels of said oats so sold during the year next preceding; that said price of ten dollars per bushel for said oats is entirely fictitious, not based on any market or real value of said oats, nor on any expectation that such would ever become the market value thereof; but said price was fixed solely for the purpose of said scheme, that the market or real value of said oats is and always was not more than fifty cents per bushel; that said scheme was carried on by and in the name of certain companies, organized solely for that purpose, commonly known as Bohemian Oats Companies; that it was always certain, said scheme doubling in size and extent each year, that the time would come when said scheme could no longer be carried on, and that the same would then suddenly collapse and be at an end; but the exact time when said scheme would thus be suddenly broken up and abandoned always was uncertain and contingent; and that who would gain or lose by said scheme depended on the length of time said collapse could be postponed. That the only consideration of said note was twenty bushels of said oats, sold to defendant Matthew S. Stewart, at said fictitious price of ten dollars per bushel, to be used in pursuance of said scheme, and a bond of a certain Bohemian Oats Company, conditioned that said company would sell for said Matthew S. Stewart, forty bushels of said oats, at said price of ten dollars per bushel, and under the terms of said Bohemian Oats scheme within about one year from the date of said note.

That the fulfillment of the obligation of said bond depended upon the ability of the company to carry on said scheme and keep up such fictitious prices for said oats long enough so to do.

That said note and bond are parts of an entire oats contract between the defendant Matthew S. Stewart and one of said Bohemian Oats companies, entered into with the purpose of speculating in said Bohemian Oats, in pursuance of and under the terms, conditions and contingencies of said Bohemian Oats scheme as above set forth. Defendants say said note is absolutely void and of no effect, and pray to be dismissed, etc.

To this pleading the plaintiff filed a general demurrer, the sustaining of which is also assigned for error.

Upon the pleadings as they stood after the sustaining of the said demurrer the cause was tried resulting in a verdict for the plaintiff.

A motion for a new trial was overruled, and this is assigned for error. But there being no bill of exceptions, the only errors to be considered are:

I. The overruling of the motion to strike out certain averments of the reply.

II. The sustaining of the demurrer to the second defense, or amendment, of the answer.

Shearer, J.

As to the first assignment of error we only need say that we do not perceive that plaintiff in error was prejudiced by the action of the court below in that behalf.

The second assignment raises the question whether the transaction described in the pleadings was in violation of the provisions of sec. 4269 of the Rev. Stat., which (so far as it is material to the present inquiry) reads as follows:

"Section 4269. All * * * notes * * * or other contracts * * * where the whole or any part of the consideration * * * is for money, or other valuable thing whatsoever, won or lost, *laid, staked or betted*, at or upon any game of any kind, or under any denomination or name whatsoever, * * * or on *any wager* * * * shall be absolutely void and of no effect."

In construing this section with reference to the transaction described in the answer, the question arises as to what constitutes a bet or wager.

In Harris v. White, 81 N. Y., 539, the court say: "A bet or wager is ordinarily an agreement between two or more, that a sum of money or other valuable thing (in contributing which all agreeing take part) shall become the property of one or some of them, on the happening in the future of an event at present *uncertain*." Again, in *Ex parte Young*, 6 Bissell, 67, it is said that "A wager is a contract by which two or more parties agree that a certain sum of money or other thing, shall be paid or delivered to one of them on the happening or not happening of an *uncertain* event." To the same effect are 44 How. Pr., 207; 1 Bosw. 212; 22 V., 293. Thus it will be observed that a bet or wager, involves the elements of mutuality, risk and uncertainty, the absence of which will destroy the wagering character of a given transaction. Both parties to a bet or wager, must concur in the purpose to risk the thing laid, staked or betted, and in the intent that the same shall be won or lost upon the uncertain event or contingency.

The term "Wager," is sometime applied, popularly, to transactions of a gambling character, called "Options," "Futures," etc. Whether the phrase "*any wager*," used in the section under consideration, can be held to include such transactions may be doubted; but the decision of the question is unnecessary here, since the contract in controversy differs in a material respect from an "option," in that, in the latter, it is understood between the parties, from the beginning, that there is to be no delivery of the property dealt in; but the contract is to be settled by the payment of differences between the contract price and the market price at a given time in the future. See Dewey on Contracts, 28. In this case the oats were delivered concurrently with the execution of the note sued on.

Under the rules above stated can it be said that anything was laid, staked or betted in the transaction set forth in the answer? Do the facts stated constitute a bet, wager or violation of the section above quoted?

The contract between M. S. Stewart and the company as stated in the pleadings, was that the former should purchase of the latter twenty bushels of oats at ten dollars per bushel, and execute the note sued on therefor; in consideration whereof the company was to deliver said oats, and agree and undertake, within a year thereafter, to sell for Stewart forty bushels of oats at ten dollars a bushel; and to secure the performance of such agreement was to execute to Stewart a bond conditioned accordingly. All which was done.

It seems to us quite clear that there was no risk nor uncertainty in this transaction. The sale to Stewart was absolute and accompanied by immediate delivery of the property. The agreement to sell oats for Stewart the following year was unconditional, and its performance, so far as the record shows, fully secured. There is no allegation or claim that the bond was or is worthless. For aught that appears Stewart is fully protected and has incurred no hazard. The time for the performance of the agreement to sell was fixed with reasonable certainty, and, as above stated, was to be performed at all events. True, circumstances might prevent performance. Stewart might not have the quantity of oats stipulated to be sold for him; or the company might become insolvent and be unable to respond for any failure to observe the terms of the contract. But these are such uncertainties as characterize all business transactions, however free they may be of any suspicion or taint of illegality, and do not partake of the nature of chances in the sense in which that term is used in the law.

With these views, we think, the transaction is not in violation of sec. 4269, and that the demurrer to the second defense in the answer was properly sustained.

Other questions have been discussed by counsel; but in our view of the case it is unnecessary to consider them.

The judgment of the court of common pleas will be affirmed with costs, but without penalty; and the cause remanded for execution of this judgment.

Bowman & Bowman, for plaintiff in error.

Oscar T. Martin, for defendant in error.

---

420            **CRIMINAL LAW—EVIDENCE—NEW TRIAL.**